```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:____8/6/2015__        │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN WHYTE,

                                    Petitioner,                08-CR-1330 (VEC)
                                                               14-CV-3598 (VEC)
                    - against -

                                                               **AMENDED AND CORRECTED**
                                                               **OPINION & ORDER**[1]

UNITED STATES OF AMERICA,

                                    Respondent.
----------------------------------------------------------X
VALERIE CAPRONI, United States District Judge:

        John Whyte ("Petitioner" or "Defendant") was convicted in 2013 of conspiracy (18

U.S.C § 371), theft or embezzlement from an employer benefit plan (18 U.S.C. § 664) and a

violation of the Taft Hartley Act (29 U.S.C. § 186(a)(2), (a)(4) and (d)(2)).  He has filed a

petition for a Writ of Error Coram Nobis to vacate his conviction on any count that is an

aggravated felony under immigration law.[2]  Whyte, a citizen of Ireland and a legal permanent

resident ("LPR") of the United States, alleges that he received ineffective assistance of counsel

---

[1]     The Court received additional facts from Petitioner following the release of the original
sealed Opinion.  Those facts related to the timing of Whyte's obtaining legal permanent
residence status.  That information altered some of the Court's analysis, although it did not affect
the Court's conclusion.

        After the Court's initial sealed Opinion was issued, the parties agreed that Whyte would
plead guilty to a Superseding Information and that the Government would stipulate to the
granting of Whyte's Petition.  This Opinion contains the Court's initial analysis and orders as
provided to the parties on July 1, 2015, although some of the deadlines have passed and many of
the Court's requirements have been rendered moot.

[2]     By letter endorsement dated April 29, 2014, Hon. Robert P. Patterson, Jr., the originally-
assigned judge, permitted the Coram Nobis petition to be filed under seal.  Not later than July 17,
2015, the parties are ordered to inform the Court whether the safety concerns surrounding Whyte
are sufficiently grave that this entire case should remain under seal or whether by redacting
Petitioner's name or substituting his initials for a pseudonym his security could be maintained
even if the matter were filed on the public record.  *See Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110, 126 (2d Cir. 2006).

in violation of the Sixth Amendment because his attorney provided erroneous advice regarding the immigration consequences of his guilty plea.  Pet'r's Mem. in Supp. of Mot. to Vacate Conviction ("Pet'r's Mem."), Apr. 11, 2014, at 1-2.  Specifically, Whyte asserts that he was advised that deportation was not a likely result of his conviction when, in fact, he is "conclusively presumed" to be deportable.  Whyte asserts that the erroneous advice fell below an objective standard of reasonableness and that he was prejudiced.  The Government opposes Whyte's motion on both grounds.

For the reasons that follow, the parties are ordered to submit supplemental briefing on the issues identified below and to attend an evidentiary hearing on August 7, 2015, at 2:30 p.m. in Courtroom 443, Thurgood Marshall Courthouse.  Whyte is ordered to file his brief on July 14, 2015, and the Government is ordered to file its response not later than July 28, 2015.

## I.  BACKGROUND

Whyte initially entered the United States without legal permanent residence ("LPR") status.  Letter from Labe M. Richman, dated July 16, 2015 at 2.  He returned to Ireland to enter a lottery for LPR status.  Whyte was successful in the lottery and secured LPR status; he then returned to the United States.  *Id.*  Whyte has lived in the United States for well over 25 years, and his wife and children are American citizens.  Decl. of John Whyte Submitted as Ex. F to Pet'r's Mem. ("First Whyte Decl."), April 11, 2014, at ¶ 2.  While Whyte's underlying conduct was obviously not to be condoned, he is not the sort of "criminal alien" the immigration laws seem designed to affect.  Whyte is a college-educated small business owner who has never been in trouble with the law other than the offenses for which he was convicted.  He pled guilty to those offenses and cooperated with the Government for approximately five years.

### A.  Underlying Criminal Conduct

Whyte was the owner and operator of a carpentry sub-contractor in the Bronx.  Gov't Mem. in Opp'n to Pet'r's Mot. to Vacate Conviction ("Gov't Opp'n"), Aug. 28, 2014, at 2. Pursuant to a Collective Bargaining Agreement ("CBA") between Whyte and the New York City District Council of Carpenters ("District Council"), Whyte was required to make contributions on his employees' behalf to the District Council's benefit funds ("Benefit Funds").  *Id*. at 2-4.

Notwithstanding his contractual obligations, Whyte paid certain employees "off-the-books," thereby avoiding his obligation to make the required payments to the union Benefit Funds.  In addition, he bribed a shop steward to allow payment to certain employees off-the-books.  On December 28, 2008, the Government filed a three-count Information against Whyte. *Id*. at 2-3.  In Counts One and Two, the Government alleged that from 2000 to 2007, Whyte circumvented his obligation to make contributions to the Benefit Funds by under-reporting the number of hours that carpenters worked and by paying some carpenters outside of the CBA framework.  *Id*. at 3.  Count Three charged that Whyte bribed a shop steward to assist with falsifying reports.  *Id.*  Whyte entered into a cooperation agreement with the Government, pursuant to which he pled guilty to all charges in the Information.  Gov't Opp'n at 4.  Murray Richman, Esq. ("Richman") represented Whyte in all criminal proceedings.[3]

### B.  Immigration Consequences of Whyte's Plea

Counts One and Two of the Information are "aggravated felonies" because they allege fraud offenses with a loss that exceeds $10,000.  *See* 8 U.S.C. § 1101(a)(43)(M)(i).  "Any alien who is convicted of an aggravated felony at any time after admission is deportable," *see* 8 U.S.C.

---

[3]      Whyte's current attorney is Labe M. Richman.  All references to "Richman" are to Murray Richman.

§ 1227(a)(2)(A)(iii), and "[a]ny alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States," *see* 8 U.S.C § 1228(c).

An alien can overcome a conclusive presumption of deportability if the Attorney General grants the alien a discretionary hardship waiver on statutorily-defined grounds.  The Government referenced one waiver that could apply to Whyte's situation: when the "alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien."  8 U.S.C. § 1182(h)(1)(B).  This waiver is, however, subject to a threshold limitation.  In relevant part, 8 U.S.C. § 1182(h)(2) provides: "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States *as an alien lawfully admitted for permanent residence if [] since the date of such admission the alien has been convicted of an aggravated felony [].*"  *Id.* (emphasis added).

"An alien is [] 'admitted' upon his or her lawful entry following inspection and authorization . . . [and] the action that is relevant for admission is 'lawful entry.'"  *Id.* at 64 (citing 8 U.S.C. § 1101(a)(13)(A)).  Because Whyte was lawfully admitted to the United States after he received LPR status, he is ineligible for a waiver pursuant to 8 U.S.C. § 1182(h).[4]

---

[4]    At the time of Whyte's guilty plea, there was some question as to whether 8 U.S.C. § 1182(h)(2) provided the Attorney General the authority to issue a discretionary hardship waiver to someone who adjusted to LPR status while in the United States.  *See Husic v. Holder*, 776 F.3d 59, 62, 66 (2d Cir. 2015).  There has never been any question, however, that the plain language of § 1182(h)(2) prohibits its use for a person who enters the country as an LPR and is subsequently convicted of an aggravated felony.

### C.  Guilty Plea and Sentencing

Whyte contends that Richman did not correctly advise him of the immigration

consequences of pleading guilty to the Information.  In a Declaration attached to his petition,

Whyte stated:

> [P]rior to this plea of guilty I asked my lawyer, Murray Richman, whether [pleading guilty] would affect my status or an eventual application for citizenship and he said that it would not. . . . [Richman] had told me repeatedly not to worry about the immigration situation and that he was on top of it.

First Whyte Decl. at ¶ 2.

In a Declaration attached to Whyte's petition, Richman explained:

> [Whyte] was interested in the immigration consequences of pleading guilty and prior to his plea he asked me about them.  I told him at the time that because he was a cooperating defendant who was a longtime legal permanent resident with a citizen wife and children that I did not think that he would be deported for this offense and that he could obtain U.S. citizenship someday.
>
> * * *
>
> The government never told me and I did not know from my own knowledge that these offenses could be considered aggravated felonies under immigration law as fraud offenses with a loss of more than 10,000 dollars.  This would mean that defendant could never obtain citizenship and would be deportable with no right to a discretionary remedy.  The defendant nor I had any idea that this was something that could happen. . . . I assumed the problem was surmountable.

Decl. of Murray Richman Submitted as Ex. E to Pet'r's Mem. ("Richman Decl."), April 11,

2014, at ¶¶ 2-3.

At a guilty plea hearing on June 1, 2009, the following colloquy occurred with the Court:

> THE COURT: Mr. Whyte, do you understand that you are bound by your guilty plea in this matter regardless of any immigration consequences of the plea and regardless of any advice that you've

received from your counsel or others regarding the immigration consequences?

THE DEFENDANT: Yes.

Tr. of June 1, 2009 Hr'g ("Tr. 6/1/2009") at 31-32.

At sentencing on April 15, 2013, the following colloquy occurred.

THE COURT: Will the defendant be deported if he is convicted of this crime?

MR. RICHMAN: I don't believe so, your Honor.  He is married to an American citizen and has two children born in this country.

THE COURT: I don't know immigration law.

MR. RICHMAN: We may have a problem.  We are going to be making an application for citizenship, or at least a green card.  I have discussed it with [the Government] as to whether or not the U.S. Attorney's Office might be able to be of some degree of assistance.

Tr. of April 15, 2013 Hr'g ("Tr. 4/13/2013") at 7-8.

At that proceeding, the Assistant United States Attorney stated that the Government "doesn't have any knowledge – any opinion on the immigration laws or certainly [sic] ICE that decides these things, and Mr. Richman did ask me about this and I told him we could speak about it later.  The government certainly can't make any promises." *Id.* at 8.

The Government contends that both the plea agreement and the Court advised Whyte of possible immigration consequences.  The plea agreement provided: "The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences."  Plea Agreement Submitted as Ex. G to Pet'r's Mem. ("Plea Agreement"), April 11, 2014, 2014-CV-3598.  While both the plea agreement and the Court advised Whyte that he

would be bound by his guilty plea even if there were adverse immigration consequences, neither advised Whyte of the presumption of deportability nor that he would most likely be deported.

On April 30, 2014, Whyte filed the instant petition for Writ of Error Coram Nobis. Whyte requests that the Court vacate his conviction for any count that constitutes an aggravated felony.

## II.   DISCUSSION

### A.  Legal Standard

A petition for Writ of Error Coram Nobis is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998). To be successful, the petitioner must demonstrate that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Id.* "[T]he Government assumes, without conceding, that the defendant has satisfied the second and third requirements for obtaining relief pursuant to a writ of coram nobis." Gov't Opp'n at 9 n.2 (citing *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996). Accordingly, this Opinion will only address the first requirement.

To prove compelling circumstances, a petitioner must prove that a fundamental error occurred during the underlying criminal proceeding. *United States v. Morgan*, 346 U.S. 502, 512 (1954). Here, Petitioner alleges that the fundamental error was that he was denied his Sixth Amendment right to effective assistance of counsel. *See Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (denial of Sixth Amendment right to counsel was sufficient grounds for

granting a Writ of Error Coram Nobis).  To establish a claim for ineffective assistance of counsel, a petitioner must (1) show that his counsel's representation fell below "an objective standard of reasonableness" and (2) "affirmatively prove prejudice."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *See also Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001).

In *Padilla v. Kentucky*, the Supreme Court recognized that, given "the severity of deportation – the equivalent of banishment or exile . . . [it is] critical for counsel to inform her noncitizen client that he faces a risk of deportation."  559 U.S. 356, 373-74 (2010) (citations omitted) (internal quotation marks omitted).  In *Padilla*, the Court held that defense counsel's failure to advise a defendant of the immigration consequences of a guilty plea may violate the defendant's Sixth Amendment rights and established a framework for evaluating such claims. *Id.* at 380-82.

With regard to the first prong of the *Strickland* analysis, the petitioner must prove by a preponderance of the evidence[5] that his attorney did not provide objectively reasonable representation, meaning that the attorney did not accurately advise his client of the risk of deportation caused by pleading guilty.  *Id.*  The nature of this mandatory advice varies depending on the complexity of the statute governing the removal consequences of the defendant's conviction.  If "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence . . . the duty to give correct advice is equally clear."  *Id.* at 369.  When it is clear that deportation is the "presumptively mandatory" consequence of a guilty plea, defense counsel must inform his client of that consequence.  *Id.*  However, "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a

---

[5]      *See Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir. 1978) (§ 2255 proceeding).

noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 368.

Regardless of whether the immigration law is succinct and straightforward, if defense counsel provides "false assurance that [a defendant's] conviction [or guilty plea] would not result in removal," the defense counsel has not provided objectively reasonable representation. *Id.* at 368-71. Defense counsel's responsibility not to provide erroneous advice regarding the immigration consequences of a guilty plea had been recognized by the Second Circuit even before *Padilla*. *See United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002), *abrogated on other grounds by Padilla*, 559 U.S. 356 ("We believe that an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable. We therefore hold that such a misrepresentation meets the first prong of the *Strickland* test."). In *Padilla*, the Supreme Court recognized that affirmatively erroneous advice violates the first prong of *Strickland.*

With regard to the second prong of *Strickland*, a petitioner has suffered prejudice if he can show that "there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different." *Kovacs*, 744 F.3d at 51-52 (quoting *Strickland*, 466 U.S. at 694). In the plea bargain context, the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla*, 559 U.S. at 372, or that there is a reasonable probability that he "could have negotiated a plea that did not impact [his] immigration status," or "that he would have litigated an available defense." *Kovacs*, 744 F.3d at 52. "[T]he defendant must show more than that the unprofessional performance merely had some conceivable effect [to] satisfy the 'reasonable probability' test[;] however, a defendant *need not show* that counsel's deficient conduct *more*

*likely than not* altered the outcome in the case." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)

(alteration in original) (citations omitted) (internal quotation marks omitted).

### B.  Ineffective Assistance of Counsel

#### 1.  Did Counsel Provide Objectively Reasonable Representation?

The Court need not determine whether the immigration statutes at issue[6] are "succinct

and straightforward" if defense counsel provided erroneous advice regarding the immigration

consequences of the defendant's plea.  Erroneous advice falls below the standard for "objectively

reasonable representation." *Padilla*, 559 U.S. at 368; *Kovacs*, 744 F.3d at 50.

Because Whyte pled guilty to an aggravated felony, he is "conclusively presumed to be

deportable from the United States." 8 U.S.C. § 1228(c).  In substance, Richman advised Whyte

that there could be adverse immigration consequences from his plea but that under Whyte's

circumstances, those consequences were not insurmountable because Whyte is married to an

American citizen and has American citizen children.  He provided that advice even though

Whyte was and remains ineligible for a 8 U.S.C. § 1182(h) discretionary hardship waiver from

the Attorney General.  *See Husic*, 776 F.3d 59, 66 (2d Cir. 2015); *see also Tellado v. United

States*, 745 F.3d 48, 55 (2d Cir. 2014) (quoting *Harrington v. United States,* 689 F.3d 124, 129-

30 (2d Cir. 2012) (evaluating whether an attorney provided effective assistance to his client by

determining whether the attorney's representation abided by "prevailing professional norms" at

the time).  Accurate advice would have been that the most likely result of his conviction was

deportation.

---

[6]      8 U.S.C. § 1227(a)(2)(A)(iii) (noncitizens will be deportable or removable for
committing an aggravated felony); 8 U.S.C. § 1101(a)(43)(M)(i) (an offense that "involves fraud
or deceit in which the loss to the victim or victims exceeds $10,000" is an aggravated felony); 8
U.S.C § 1228(c) ("An alien convicted of an aggravated felony shall be conclusively presumed to
be deportable from the United States.").

The Government argues that Richman's representation of Whyte fell within the "limited scope contemplated by the Supreme Court in *Padilla*" because Whyte was advised that there could be adverse immigration consequences of his plea. Gov't Opp'n at 14-15. According to the Government, "[a]lthough [Richman] was presumably unfamiliar with the term, [Richman] was effectively advising Whyte that a 'hardship waiver' might be available" given Whyte's marriage to a United States citizen and the fact that he has children who are United States citizens. In its briefing, the Government analogized Whyte's case to *Diunov v. United States*, No. 08-CV-3184(KMW), 2010 WL 2483985 (S.D.N.Y. June 16, 2010).

In *Diunov*, the petitioner, a non-LPR facing presumptively mandatory deportation, sought to vacate the judgment resulting from her guilty plea on the grounds that her attorney "gave her inaccurate and/or misleading advice regarding the immigration consequences of her guilty plea." *Id.* at *1. In that case, virtually every time Diunov interacted with her attorney, the Government, and the Court, she was advised that she was subject to mandatory deportation. At her guilty plea allocution, the Magistrate Judge asked her: "Do you understand [that] if you are not a United States citizen, you will be subject to deportation on the basis of your conviction?" *Id.* at *2 (alteration in original). Diunov responded: "I do." *Id.* At that same hearing, the Government stated that Petitioner "ha[d] pled guilty to what under the immigration law is an aggravated felony, which requires deportation," and that "the presumption here is certainly, having pled guilty to an aggravated felony, in fact, three aggravated felonies, she will presumptively be deported from this country." *Id.*

In a supplemental affidavit, Diunov's attorney explained the content of his advice regarding immigration matters. He had advised her that "a conviction or guilty plea would result in deportation or removal from the country . . . [but] there may be some way she could avoid

11

deportation under a hardship theory because of her adolescent daughter who was either a United States citizen or resident." *Id.* at *6-7. He thought she had a "good argument" for a hardship waiver and advised her to seek outside counsel. *Id.* at *7.

Given the totality of Diunov's interactions with her attorney, the Government, and the Court, the Court held that "[t]here is no question that [Diunov] was aware [that she was subject to mandatory deportation as an aggravated felon] at the time she entered her plea." *Id.* at *9. Although the Court found that Diunov's attorney exaggerated the likelihood that she would actually receive a waiver, he did advise her of the presumption of deportation and to seek advice from an immigration specialist. "Failure to explain certain factors that would be relevant to securing a hardship waiver was not unreasonable under the circumstances." *Id.* at *11.

The circumstances of Whyte's case are vastly different from Diunov's. In *Diunov*, the petitioner was clearly advised that she was subject to mandatory deportation, albeit with the possibility of securing a waiver. In Whyte's case, however, Richman's advice made it appear that although deportation was possible, it was not likely. That advice was provided by Whyte's own attorney and was not contradicted by the Government or the Court even though Whyte is ineligible for a 8 U.S.C. § 1182(h)(2) hardship waiver despite being "a cooperating defendant who was a longtime legal permanent resident with a citizen wife and children." *See* Richman Decl. at ¶¶ 2-3. The Government seeks to mitigate the fact that the advice given was wrong by arguing that Whyte is currently eligible to request one of "a number of highly-nuanced 'hardship waivers,' found among the myriad sections and subsections of the [INA], for certain classifications of deportable aliens." Gov't Opp'n at 14-15 (citing 8 U.S.C. 1182(h)(1)(B)). The parties have not, however, directed the Court to any other discretionary waiver provision that could have applied to Whyte's situation at the time of his plea.

Thus, the question whether Whyte received objectively reasonable representation turns on at least three issues. First, whether Whyte was eligible to apply for a waiver at the time he pled guilty. Second, whether the difference between what Richman advised Whyte and what would have been accurate advice is sufficiently large to satisfy the first prong of *Strickland*. Third, whether the possibility of securing a hardship waiver is so remote as to be effectively unavailable to Whyte. The parties are ordered to address these three questions in their supplemental briefing.

### 2. Was Petitioner Prejudiced?

Having pled guilty, a petitioner must demonstrate that there is a reasonable probability that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. *See Poole*, 409 F.3d at 63 (noting that a "reasonable probability" is a lower standard than a preponderance).

Courts have considered several factors when evaluating whether a decision to reject a plea bargain would have been rational, including: whether the petitioner-defendant placed "particular emphasis" on immigration consequences;[7] whether the prosecution would have accepted and the court would have approved a disposition that did not yield the adverse immigration consequences;[8] and whether the petitioner-defendant had factual defenses that would have been available at trial.[9] *See generally Kovacs*, 744 F.3d at 52.

---

[7]     *See, e.g.*, *Kovacs*, 744 F.3d at 53 ("It is apparent from the transcript of the Rule 11 hearing that Kovacs' single-minded focus in the plea negotiations was the risk of immigration consequences."); *Dorfmann v. United States*, 597 F. App'x 6 (2d Cir. 2015) (summary order).

[8]     *See, e.g.*, *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012); *Kovacs*, 744 F.3d at 52.

[9]     *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

It is apparent that Whyte closely considered the immigration consequences when deciding whether to plead guilty.  Prior to his allocution, Whyte "repeatedly" asked his attorney whether the plea would affect his immigration status.  First Whyte Decl. at ¶ 2.  In a declaration attached to his Reply, Whyte stated:

> The immigration result was just as important to me as the penal consequence, if not more important.  As I said before, I have been in the United States since 1987 and received my green card after that.  I am married to a United States citizen and I have two United States citizen children.  Prior to this plea I had been living in the United States for about 22 years.  After 22 years, jail as [sic] not the primary consideration.

Decl. of John Whyte Attached to Reply ("Second Whyte Decl."), Oct. 3, 2014, at ¶ 6.  Richman also attested to Whyte's interest in the immigration consequences of his plea.  *See* Richman Decl. at ¶ 2.  In short, there is no real dispute that Whyte placed particular emphasis on the immigration consequences of his guilty plea.

It is less clear, however, whether there is a reasonable probability that the Government would have offered a disposition that did not yield the exact same immigration consequences as Whyte is currently facing.  Federal courts have found prejudice in situations in which the defense counsel negotiated a plea agreement that incompletely insulated the defendant from adverse immigration consequences and in situations in which the defense counsel never explored the option of renegotiating the plea agreement with the prosecutor after learning of potentially adverse immigration consequences.

In *Kovacs*, for example, the defendant and prosecutor settled on a guilty plea to misprision of felony for the "sole reason that [defense counsel] believed it would not impair [the defendant's] immigration status—a view that [defense counsel] conveyed to the prosecution."  744 F.3d at 53.  The Court held that even though the plea incompletely insulated the defendant

14

against the adverse immigration consequences, the defendant had demonstrated a "reasonable probability that he could have negotiated a plea with no effect on his immigration status." *Id.* *See also United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir. 2005) (finding prejudice where "[c]ounsel [neither] explored the option of renegotiating the plea agreement with the prosecution so as to avoid the deportation consequences . . . [nor] inform[ed] the sentencing judge that [the defendant] would almost certainly be deported if he was sentenced to a year or more in prison."), *opinion amended on reh'g*, 2005 WL 1692492 (9th Cir. July 21, 2005), *abrogated on other grounds by Padilla*, 559 U.S. 356.

The Second Circuit has recognized that in certain cases, the severity of immigration consequences "may [be] enough to . . . allow[] petitioner to negotiate a more favorable plea agreement with the Government," *Kovacs*, 744 F.3d at 52 n.4 (quoting *Sasonov v. United States*, 575 F. Supp. 2d 626, 639 (D.N.J. 2008)), and that a petitioner can show prejudice if defense counsel "could have negotiated with the government in such a way as to produce a sentence that would not have triggered the INA mandatory removal provisions," *id.* (quoting *United States v. Shaw*, No. 99-CR-525, 2004 WL 1858336, at *11 (E.D. Pa. Aug. 11, 2004)). In *Sasonov*, for example, the court noted that defense counsel's failure to present the immigration issue to the Court at sentencing – denying the Court an opportunity to sentence with immigration consequences in mind – was suggestive of prejudice. 575 F. Supp. 2d at 639. *See also Shu Feng Xia v. United States*, No. 12-CR-934-9(RA), 2015 WL 4486233, at *6 (S.D.N.Y. July 20, 2015) (holding that the petitioner had suffered prejudice because his attorney failed to inform the sentencing judge of "the risk of deportation").

Here, Whyte is facing comparably severe immigration consequences to those faced by the defendant in *Sasanov*. Both Whyte and Sasanov have a wife and children who are American

citizens, and both were LPRs at the time of their convictions.  *Id.* at 631 n.1.  Given Whyte's

cooperation from the outset, the Government may well have been receptive to structuring the

disposition of the case against Whyte in a way that would improve his situation vis-à-vis the

immigration consequences of his conviction.  Moreover, because Whyte, an alien admitted to the

United States as a LPR, is ineligible pursuant to 8 U.S.C. § 1182(h) to apply for a discretionary

waiver based on hardship to his American citizen family members, it is not unreasonable to

suspect that the United States Attorney's Office might have accommodated a request to structure

a plea for their cooperator so that Whyte would plead only to non-aggravated felony charges.

Indeed, Whyte has demonstrated a number of ways in which minor changes, which do

not include the crimes to which he pled guilty, could have better-situated Whyte to argue that he

is not an aggravated felon.  *See* Pet'r's Mem. in Supp. of Reply ("Pet'r's Reply"), October 3,

2014, at 2-3 (citing *Akinsade v. Holder*, 678 F.3d 138, 145 (2d Cir. 2012) (arguing that the plea

agreement did not have to expressly set forth "fraud" or allege loss of $10,000 or greater)).  Last,

because Richman did not raise the presumption of removability at the time of the guilty plea or at

sentencing, the Court had no opportunity to take corrective action.[10]

Thus, prejudice turns on whether there is a reasonable probability that the Government

would have been willing to offer Whyte a different deal if Richman had raised Whyte's

conclusive presumption of deportability during plea negotiations.  The Court will hold an

---

[10]     Whyte separately argues that he could have raised the factual defense at trial that he did
not have a contract with the District Counsel to pay into the Benefit Funds.  Pet'r's Reply at 2-4.
"When a petitioner claims that he would have pursued an affirmative defense but for his lawyer's
erroneous advice, the resolution of the 'prejudice' inquiry will depend largely on whether the
affirmative defense likely would have succeeded at trial."  *Kovacs*, 744 F.3d at 53 (citing *Hill v.
Lockhart*, 474 U.S. 52, 59 (1985) (internal quotation marks omitted).  It is unlikely that this
defense would have been successful because the Government's case against Whyte was
"bolstered by financial records, testimony of multiple witnesses, and a recording of Whyte" that
detailed Whyte's contractual relationship with the District Counsel.  *See* Gov't Opp'n at 19-20.

evidentiary hearing on August 7, 2015, at 2:30 p.m., on this issue.  The parties are ordered to consider whether the Government has been willing to modify plea agreements to avoid immigration consequences in situations similar to Whyte's, whether the Government had any policy or practice at the time of Whyte's guilty plea regarding modifying plea agreements to mitigate potential immigration consequences (particularly vis-à-vis cooperating defendants), and whether the Government might have been willing to offer Whyte a different agreement at the time had the presumption of deportability been raised.

### 3. Was Prejudice Cured by the Court's Advice of Rights?

The Government argues that even if Whyte received ineffective assistance of counsel, any prejudice was cured by the Court's advice of rights.

Because statements of the trial judge constitute a "formidable barrier" to an ineffective assistance claim raised in a collateral proceeding and because trial courts are afforded latitude to advise defendants of their Sixth Amendment rights, *see Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), several judges in the Southern District of New York have found, in fact-specific contexts, that the court's advice of rights relating to the immigration consequences of a guilty plea can cure any failing of defense counsel.

In *Bhindar v. United States*, for example, the defendant, a LPR, claimed that his attorney had provided erroneous advice regarding the immigration consequences of his guilty plea. No. 07-CR-711-4(LAP), 2010 WL 2633858, at *5 (S.D.N.Y. June 30, 2010).  At Bhindar's plea allocution, the following colloquy occurred:

> THE COURT: Mr. Bhindar, do you understand that one of the consequences of your guilty plea, if you are not a citizen of the United States is that, at the conclusion of your sentence, you will be removed from the United States and prohibited from ever reentering the United States? That is a consequence if you are not a citizen, do you understand that?

17

THE DEFENDANT: Yes, Your Honor.

*Id.* at *2.  In *Bhindar*, this Court was satisfied that these specific warnings were sufficient to remedy any prejudice from defense counsel's erroneous advice because "the clear instruction from [the Magistrate Judge] was sufficient to put [the defendant] on notice that he would be removed if he pleaded guilty."  *Id.* at *6.[11]

In *Gonzalez v. United States*, the defendant, a LPR, claimed that his attorney failed to advise him of the adverse immigration consequences of his guilty plea.  No. 10-CV-4463(AKH), 2010 WL 3465603, at *1 (S.D.N.Y. Sept. 3, 2010).  During his guilty plea allocution, the following colloquy occurred:

> THE COURT: One possibility of your pleading guilty, if you do plead guilty, is that you could be deported from the United States. Are you aware of that?
>
> THE DEFENDANT: Yes, your honor.

*Id.*  Judge Hellerstein explained that, given the Court's warning – even in the face of defense counsel's alleged failure to advise on the issue of mandatory removal – the defendant could not show a "reasonable probability" that but for counsel's failure to advise, the result would have been different.  *Id.* (citing *Strickland*, 466 U.S. at 694).  When the defendant's attorney failed to advise his client on the possibility of immigration consequences at all, the Court's warning that

---

[11]     In *Morel v. United States*, Judge Stein applied the same reasoning.  No. 02-CR-1542(SHS), 2012 WL 1940509, at *2 (S.D.N.Y. May 29, 2012).  In *Morel*, the defendant claimed that his attorney failed to inform him of adverse immigration consequences of his guilty plea.  *Id.*  During the defendant's guilty plea allocution, the Magistrate Judge asked the defendant: "Do you understand that if you are not a United States citizen, you would be subject to deportation on the basis of your conviction?"  *Id.*  The defendant responded: "Yes."  *Id.*  The Court found that admonition remedied any prejudice caused by defense counsel's erroneous advice.

there could be consequences was sufficient to protect the defendant's Sixth Amendment and Due Process rights.

This case differs from *Bhindar* and *Gonzalez* for two reasons: the nature of the Court's colloquy and the nature of the *Strickland* violation. At Whyte's guilty plea, the following colloquy occurred:

> THE COURT: Mr. Whyte, do you understand that you are bound by your guilty plea in this matter regardless of any immigration consequences of the plea and regardless of any advice that you've received from your counsel or others regarding the immigration consequences?
>
> THE DEFENDANT: Yes.

Tr. 6/1/2009 at 31.

Unlike in *Bhindar* and *Gonzalez*, the Court did not advise Whyte that there was either the possibility or probability of adverse immigration consequences from his plea. Instead, the Court only informed him that if there were immigration consequences, those consequences would not be a ground to withdraw his guilty plea. If the Court had issued a warning akin to the warning issued in *Bhindar*, that "one of the consequences of your guilty plea, *if you are not a citizen of the United States* is that, at the conclusion of your sentence, you *will be removed* from the United States and *prohibited from ever reentering the United States*," Whyte would have known that as a non-citizen, he would be subject to removal without remedy. 2010 WL 2633858, at *2 (emphasis added). In that hypothetical situation, Whyte's prejudice would have been cured by the Court's advice because the Court's statement of the law would have superseded his attorney's erroneous advice.

In this case, however, the Court's advice of rights does not foreclose Whyte's argument that he was prejudiced by his counsel's erroneous advice because the particular prejudice he suffered was not cured.

## III.   CONCLUSION

The parties are ordered to submit supplemental briefing and attend an evidentiary hearing on the issues identified above.

**SO ORDERED**

**Dated: August 6, 2015**
      **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**